IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KINSHIP PARTNERS, INC.,                     No. 3:21-cv-01631-HZ

         Plaintiff,                             ORDER

     v.

EMBARK VETERINARY, INC. and
ROBIN P. SMITH,

         Defendants.

HERNÁNDEZ, District Judge:

     Plaintiff Kinship Partners, Inc. ("Kinship") seeks to enjoin Defendants Robin P. Smith ("Smith") and Embark Veterinary, Inc. ("Embark") from possessing, using, disclosing, or benefitting from Kinship's trade secrets and confidential and proprietary information. Plaintiff also seeks to prohibit Smith from working for Embark because such work threatens the misappropriation of Kinship's trade secrets and confidential and proprietary information. For the following reasons, Plaintiff's Motion for a Temporary Restraining Order [2] is granted.

1 – ORDER

## BACKGROUND

Kinship and Embark, as the two leading providers of canine DNA testing services worldwide, are head-to-head competitors. Compl. ¶ 2, ECF 1. Defendant Smith is the former Head of Product for Kinship's Wisdom brand. When he was hired to his recent position at Kinship in December 2020, Smith signed a Proprietary Information and Inventions Agreement and a Confidentiality Agreement. Id. at ¶ 25-28. He did not sign a non-compete agreement.

On November 1, 2021, Smith sent Kinship a notice of resignation, indicating his last day would be November 12, 2021 and that he intended to join Embark in a role focusing on research and development. Yoo Decl. ¶58, 61, ECF 2-1. After Smith resigned, Kinship conducted a "forensic review" of his network activity and found that in weeks leading up to his resignation, Smith downloaded "nearly 30 confidential business documents, including presentation materials outlining Wisdom's product roadmap for the next five years from the Company's Shared Drive." Id. at ¶ 68. Plaintiff also alleges that in the hours before he resigned, Smith logged onto Kinship's secure Shared Drive and reviewed several confidential documents and trade secrets. Compl. ¶ 45. At the time of this Order, Plaintiff alleges but presents no evidence that Smith has started working for Embark.

## STANDARDS

The standard for a temporary restraining order ("TRO") is "essentially identical" to the standard for a preliminary injunction. *Chandler v. Williams*, No. CV 08-962-ST, 2010 WL 3394675, at *1 (D. Or. Aug. 26, 2010) (citing *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brushy & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001)); *see also Daritech, Inc. v. Ward*, No. CV–11-570–BR, 2011 WL 2150137, at * 1 (D. Or. May 26, 2011) (applying preliminary injunction standard to motion for TRO). "A plaintiff seeking a preliminary injunction must establish that he is likely

2 – ORDER

to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns. Inc. v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008)). "The elements of [this] test are balanced, so that a stronger showing of one element may offset a weaker showing of another. For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Similarly, serious questions going to the merits, coupled with a balance of equities that tips sharply in a plaintiff's favor, will support the issuance of an injunction if the other elements of the test are met. *Id.* at 1134–35 (internal citations omitted).

## DISCUSSION

Plaintiff brings claims against Defendants under the Defend Trade Secrets Act, 18 U.S.C. § 1836 and the Oregon Uniform Trade Secrets Act ("OUTSA"), Or. Rev. Stat. § ("O.R.S.") 646.461 *et seq*. OUTSA authorizes courts to temporarily, preliminarily, or permanently enjoin actions that result in actual or threatened misappropriation of proprietary trade secrets. O.R.S. 646.463(1). Plaintiff, through its verified complaint and the declaration of Kyoung Yo Yoo, Kinship's Head of Data & Knowledge Services, presents facts showing Smith had access to Kinship's confidential and proprietary trade secrets, accessed and downloaded documents containing confidential and proprietary information, and abruptly resigned with the intent to work for Embark, Kinship's primary competitor. From these facts, the Court can infer a potential threat of misappropriation, even if Plaintiff presents no direct evidence that misappropriation has occurred. *See A Place for Mom v. Perkins*, 475 F. Supp. 3d 1217, 1227 (W.D. Wash. 2020) (holding that the defendant employee misappropriated the plaintiff employer's protectible trade

3 – ORDER

secrets when she emailed documents and reports to herself prior to resigning); *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1271 (7th Cir. 1995) (holding that the inevitability that a former employee would rely on Plaintiff's trade secrets in his new job with Plaintiff's competitor demonstrated a likelihood of success on its claim of trade secret misappropriation). Thus, Plaintiff presents sufficient facts to demonstrate a reasonable likelihood of success on the merits.

Plaintiff also shows a significant risk of irreparable harm. Any use or disclosure of Kinship's trade secrets by Smith, including but not limited to Kinship's competitive business strategy against Embark, would cause substantial harm to Plaintiff. *See Phoseon Technology, Inc. v. Heathcote*, No. 3:19-cv-2081-SI, 2019 WL 7282497, at *12 ("[T]he misappropriation of trade secrets constitutes *prima facie* evidence of irreparable harm."). Regarding the balance of equities, such harm to Plaintiff significantly outweighs any harm to Defendants from resulting from a TRO. Pursuant to Federal Rule of Civil Procedure 65(b)(2), a TRO can last no longer than 14 days.[1] A temporary hold on Smith's employment with Embark will not cause lasting or irreparable harm to either defendant. *See Natsource LLC v. Paribello*, 151 F. Supp. 2d 465, 472 (S.D.N.Y. 2001) ("[Plaintiff's] need to protect its legitimate business interests substantially outweighs the virtually non-existent concern that [Defendant] could lose his livelihood.")

Lastly, the public interest factor here is neutral. "When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the preliminary injunction analysis." *Stormans v. Selecky*, 586 F.3d 1109, 1138-39 (9th Cir. 2009). Plaintiff asserts that the public interest factor weighs in its favor because if Smith works for and discloses trade secrets to Embark, such action would "unfairly

---

[1] Under Federal Rule of Civil Procedure 65(b)(2), the Court may extend the TRO by an additional 14 days upon a showing of "good cause."

stifle competition in an extremely limited market." But any potential impact of Defendants' anticompetitive actions on the public interest is too speculative to be considered a factor in the TRO analysis.

Weighing the TRO factors in totality, the Court determines that Plaintiff has met its burden of establishing the elements necessary for the Court to grant a TRO.

## TEMPORARY RESTRAINING ORDER

IT IS ORDERED that Plaintiff's Motion for a Temporary Restraining Order [2] is GRANTED as follows:

(1) Until the Court orders otherwise and except as otherwise expressly permitted by this TRO, for the next 14 days, or until such time as the parties agree in writing to terminate, amend, or supersede this TRO, Defendant Robin Smith is enjoined from working for or providing services (as an employee, consultant, contractor agent, or otherwise) to Defendant Embark.

(2) Defendants Smith and Embark shall:

(a) Pursuant to Federal Rule of Civil Procedure 26(d)(1), immediately preserve all documents, data, tangible things, and other materials relating to this case including, without limitation, emails, data, databases, cloud storage, and paper and electronic data and documents, including any and all metadata, and shall take all steps necessary to do so;

(b) Be enjoined from altering, destroying, or disposing of any evidence or other materials, in any form, relating to this action or the issues raised herein, including, without limitation, all devices, electronic media, cloud storage, and all copies of any and all documents, media and/or other materials, containing, identifying,

describing, reflecting or referencing Plaintiff's trade secrets and confidential or proprietary information, and any and all documents, data and information which was obtained by Defendants, collectively or individually from, or by virtue of, Smith's employment with Kinship, including all current or archived media, emails, chats, texts, documents, electronic logs, metadata, storage and directories;

(c) Be enjoined from directly or indirectly accessing, using, disclosing, or making available to any person or entity other than Kinship, any of Kinship's trade secrets or confidential or proprietary documents, data, or information; and

(d) Be enjoined from directly or indirectly violating or interfering with the confidentiality obligations contained in Smith's Proprietary Information and Inventions Agreement and/or Confidential Information and Invention Assignment Agreement with Kinship.

(3) The parties may engage in expedited discovery, within the scope of Federal Rules of Civil Procedure 26, in a timeframe that allows for the exchange of documents, responses to discovery requests, and the taking of depositions at least three (3) days before the preliminary injunction hearing.

(4) Pursuant to Federal Rule of Civil Procedure 65(c), Plaintiff is ordered to pay a security in the amount of $10,000 to offset costs sustained by Defendants in the event they have been wrongfully restrained.

(5) The parties are hereby directed to appear before this Court for a preliminary injunction hearing at a date and time to be scheduled, but to be no later than 14 days from the date of this Order.

## CONCLUSION

Plaintiff's Motion to a Temporary Restraining Order [2] is GRANTED. The Temporary Restraining Order will expire within 14 days of its issuance.

IT IS SO ORDERED.

DATED: _November 10, 2021_.

_____
MARCO A. HERNÁNDEZ
United States District Judge

7 – ORDER